112 N.J. Super. 138 (1970)
270 A.2d 633
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS B. KING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1970.
Decided November 2, 1970.
*139 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Martin L. Greenberg, assigned attorney, argued the cause for appellant.
Mr. Joseph A. Fusco, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney); Mr. Seymour Wishman, Assistant Prosecutor, on the brief).
*140 PER CURIAM.
Defendant appeals from a conviction of murder in the first degree for which he was sentenced to a term of life imprisonment.
On October 30, 1968, at about five o'clock in the afternoon, one Calvin Baskerville was shot to death in a small restaurant in Newark. Defendant admitted that he was present at the time but denied being the assailant. The State produced only one eyewitness to the shooting, who identified defendant as the killer.
An incident occurred near the close of the trial upon which defendant bases his principal ground for reversal. A witness for the State, Ruth Woodard, was a waitress in the restaurant and present at the time, although she did not actually see the shots fired and hence could not say who did the shooting. Out of the presence of the jury she stated that as she was running from the building after the killing, in company with other occupants of the restaurant, she heard an unidentified voice say, "Tex shot Calvin." Tex is defendant's nickname. The court sustained defendant's objection to the introduction of the statement. After retiring to deliberate, the jurors asked to have read back to them portions of the evidence, including the testimony of Ruth Woodard. The court reporter, in reading from her notes, inadvertently included certain statements that had been made out of the jury's presence, including the statement that the witness, Ruth Woodard, had overheard someone say, "Tex shot Calvin." The trial judge at once, and in vigorous terms, admonished the jury to give no consideration to the remark. At this point defendant's counsel asked leave to reserve his right to move for a mistrial, believing, obviously, that the jury might return a verdict of acquittal. A colloquy followed to which we make further reference below. No motion for a mistrial was in fact made and the jury returned a verdict of guilty. In due course defendant moved for a new trial, which was denied.
Defendant couches his argument in constitutional terms and we will so consider it. He first contends that the admonition *141 given by the court, vigorous and prompt as it was, could not fairly be said to have erased from the minds of the jurors the damaging effect of the offensive testimony. He points out that he had no opportunity to cross-examine the unknown declarant, and hence claims to have been denied the right of confrontation that is preserved to him by the Sixth Amendment.
The right of a defendant in a criminal case to confront the witnesses whose testimony is to be used against him, as this right is embodied in the Sixth Amendment, is so fundamental in character that its recognition is required in state trials. "* * * (T)he Sixth Amendment right of an accused to confront the witnesses against him is * * * a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923; Annotation, "Federal Constitutional Right to Confront Witnesses-Supreme Court Cases," 23 L.Ed.2d 853, 861 (1969). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." 5 Wigmore, Evidence (3 ed. 1940), § 1395, p. 123. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).
Quite obviously, the statement, uttered by an unknown declarant, that "Tex shot Calvin," was damaging to defendant  just how damaging will be considered below. Yet he had no means or opportunity to test the credibility of the anonymous declarant. Furthermore, it is significant to note that in the unusual circumstances under which the statement reached the ears of the jury, defendant's counsel had no opportunity to cross-examine the witness, Ruth Woodard, as to whether she ever really heard the statement or whether she might have been mistaken as to what she heard. Nor did he have an opportunity to introduce rebuttal testimony, or make any reference to the comment in summation. If, as defendant contends, the improper remark was in fact considered by the jury, it would seem that he has, *142 indeed, been deprived of his constitutional right of confrontation.
Thus we reach the question as to whether the admonition of the trial judge may be said to have successfully expunged from the minds of the jurors the unfortunate and inadmissible comment. In order to determine this question, at least to the extent that determination is possible, it is necessary to review some of the other evidence that was received. The State had not been able to marshall proofs sufficient to present a very strong case. As has been mentioned, there was only one eyewitness to the shooting. This was another waitress named Dorothy Smith. By her own admission she was a heroin user who had taken a dose of the drug that morning. In seeking to impugn her testimony the defense introduced evidence that she had given herself a further injection of the drug only a short time before the shooting and, in fact, was in a stupor when the murder occurred; that a man with whom she said she was seated at table was not in fact in the restaurant at the time, and that instead of being at a table in the front of the store where she could have witnessed the shooting, she was actually in the kitchen from which spot the incident could not have been seen. Of course, the issue of her credibility was for the jury to determine, but it seems fair to observe that it was only this single, strongly challenged statement made by this one witness that implicated defendant, prior to the jury hearing the inadvertent comment.
Recently, in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court had occasion to re-examine the effectiveness of a court instruction as limiting the proper scope of jury consideration of particular testimony. Overruling an earlier decision to the contrary, it held that the confession of a colleague implicating the defendant could not, by a limiting instruction, be so removed from the minds of the jury as to preclude its being considered to the prejudice of the defendant. It therefore concluded that there had been a violation of the confrontation *143 clause of the Sixth Amendment. The decision quotes from Justice Jackson's concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949) that, "The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction."
Defendant insists that the jury was or may well have been swayed by the challenged remark in reaching its determination of guilt. We cannot in good conscience disagree.
Accordingly, we hold that defendant has in fact been deprived of his right of confrontation. Is this harmless error or something akin thereto? What we have already said indicates we do not think so. It is true that the Supreme Court of the United States has recently refused to hold that "all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful." Chapman v. California, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Nor is every denial of a defendant's right of confrontation so harmful as automatically to require reversal. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Here, however, we are strongly persuaded that there does exist a reasonable possibility that the offending remark contributed to the jury's finding of guilt. As was said in Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."
The State contends that the remark was originally admissible, that its initial exclusion was improper, and hence that what occurred cannot be classified as error.
A statement is admissible if it was made (a) while the declarant was perceiving an event or condition which the statement narrates, describes or explains, or (b) while the declarant was under the stress of a nervous excitement caused by such perception, in reasonable proximity to the event, and without opportunity to deliberate or fabricate. Evidence Rule 63(4).
*144 The difficulty with the application here of this exception to the hearsay rule is that we are left to pure conjecture as to whether or not the unknown declarant did actually perceive the shooting. If he or she (there was no identification as to sex) did not actually see the shooting, then testimonial qualification is lacking and for that reason the statement would be inadmissible. 6 Wigmore, Evidence (3 ed. 1940), § 1751, p. 155. For all we know the declarant may have overheard the comment of another and based his or her statement upon that remark.
A word should be said with respect to the denial of defendant's motion for a new trial. The denial was apparently based upon a finding by the court that the grounds urged had been waived, since no motion for a mistrial was made at the time of the occurrence described above. We do not read the remarks of the trial judge made at that time as so clearly denying defense counsel's request to reserve his motion as to put him on clear notice that waiver would result from a failure or refusal to make his motion forthwith.
For the reasons set forth above we reverse and remand for a new trial.