139 N.J. Super. 150 (1976)
353 A.2d 109
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BRYANT HARE AND CLIFFORD LLOYD, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1975.
Decided February 4, 1976.
*151 Before Judges ALLCORN, KOLE and KING.
Mr. Thomas A. Pavics, Assistant Deputy Public Defender argued the cause for defendants-appellants (Mr. Stanley Van Ness, Public Defender, attorney).
Mr. William F. Bolan, Jr., Deputy Attorney General argued the cause for the plaintiff-respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendants Hare and Lloyd appeal from a verdict of guilty and a conviction of murder in the first degree arising out of a robbery. Following verdict the trial judge imposed sentences of life imprisonment in the New Jersey State Prison.
Defendants were charged with the murder of Frederick Seidoff in Elizabeth. At about 11:00 P.M. on June 15, 1973 the victim was assaulted and robbed by four or five young men on a street near the Elizabeth Armory. The victim later died on July 3, 1973.
*152 The State produced several witnesses to the events surrounding the criminal episode. All of the witnesses generally agreed that the attack was carried out by a group of four or five young men. The State's most important witness was a 16-year-old male, Barry Hankins. This witness testified that he was alone and about 50-75 feet from the scene of the attack when he made his observations. Having said he saw defendant Hare grab the victim initially and then the defendant Lloyd hit the victim. Hankins then saw "all four boys" stomp and kick the victim and saw Lloyd take a wallet out of the victim's pocket. Hankins could not identify the other assailants. None of the other State's witnesses could describe the entire event in detail, as did Hankins, who was the only witness who actually identified defendants as participants during the course of the attack. The State's other witnesses, including Barry Hankins' sister, Theresa, saw some pertinent aspects of the episode from a distance where they were congregated on the steps of the Elizabeth Armory. Several of the State's witnesses testified that defendant Lloyd, after the incident and as the group of suspected attackers were walking past the Armory, told one of the State's witnesses to, in effect, keep "his mouth shut" about anything he saw. None, other than Hankins, could positively identify defendants as those carrying on the attack. The crucial aspect of Hankins' testimony is emphasized by the jury's request to have his testimony reread during its deliberations. This request was properly granted by the trial judge. The jury did not request the rereading of any other testimony. Following his observation of the attack Hankins joined the other young bystanders congregated on the steps of the Elizabeth Armory. One of those present activated a fire alarm in order to summon help for the victim. Hankins remained in the area until the police came to remove the victim. On the evening of the crime he volunteered no information to the police who came to the scene. On the following evening, in response to a police inquiry, Hankins gave a detailed statement inculpating defendants Hare and *153 Lloyd as two of the four assailants whom he observed. He had known Hare and Lloyd for a considerable period of time before the attack. Hankins could not identify the several other assailants.
At the time of the episode and at the time of trial Hankins was on juvenile probation. Prior to Hankins' direct examination defense counsel applied to the court for leave to cross-examine Hankins on his status as a juvenile probationer. The trial judge denied this application and refused to permit any cross-examination as to Hankins probationary status. The defense's offer was designed to show bias, prejudice, interest or ulterior motive. Defendants now assert error of federal constitutional dimension, claiming denial of the full right to confrontation under the Sixth Amendment of the Federal Constitution. Defendants rely on the decision of the United States Supreme Court in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), as announced by Chief Justice Burger. In Davis, the court recognized "the tension between the right of confrontation and the State's policy of protecting the witness with a juvenile record * * *," 415 U.S. 314, 94 S.Ct. 1109, and opted for the right of confrontation, requiring disclosure of the juvenile record. The New Jersey statute precludes use of a juvenile record to discredit a witness. N.J.S.A. 2A:4-61. In Davis the state's key witness was a juvenile probationer who had been adjudicated delinquent on a burglary charge. In the present case Hankins was on probation following adjudication on a breaking and entering and larceny charge. In Davis, as in the present case, the defense desired to attack the witness's credibility by exposure of his vulnerable probation status to reveal possible biases, prejudice, interest or ulterior motives. The following language in Davis is pertinent here:
We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense *154 theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided "a crucial link in the proof ... of petitioner's act." Douglas v. Alabama, 380 [U.S. 415] at 418, [419, 85 S.Ct. 1074, 1077] 13 L.Ed.2d 934. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, cf. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624, (1931), as well as of Green's possible concern that he might be a suspect in the investigation. [415 U.S. at 318, 94 S.Ct. at 1111.]
It is difficult to tell from the opinion in Davis whether the United States Supreme Court would require both elements to be present, i.e., vulnerable status as a probationer and the witness's possible concern that he might be a suspect.
In Davis the State's witness could readily have been a suspect. A burglarized safe was found on his parents' property and near the home where the witness lived with his family. In the present case Hankins would not have been so clearly suspected. In Davis the court felt the defense should be permitted to argue that the witness may have acted out of fear or concern of possible jeopardy to his probation. Not only might he have made a hasty and faulty identification to shift suspicion away from himself but he might have been the subject of undue police pressure arising out of fear of possible probation revocation. The Davis case speaks of the witness's "possible concern that he might be a suspect in the investigation," and stresses the jury's right to weigh all facts relevant to such concern. 415 U.S. at 318, 94 S.Ct. at 1111. Here Hankins could have readily harbored such concern. He was a juvenile probationer, presumably a status ready made to attract police suspicions. He was alone and only 50-75 feet from the criminal episode when it took place. He was of the same age, sex and physical characteristics as the generally described four or five assailants. Hankins had earlier been in the group of young people congregated on the steps of the Elizabeth Armory and who had witnessed certain aspects of the attack. At around 10 P.M. *155 he left the group to visit a friend. He left by himself and was returning from his friend's house to rejoin the group on the Armory steps when he encountered the criminal attack in progress. Again he was alone. In this case we think it entirely feasible and reasonable for a jury to have concluded that Hankins could "have possible concern that he might be a suspect in the investigation." We find in the present case Hankins was a critical State's witness and that both requirements of vulnerable status and possible concern for complicity are met. As stated in Davis:
On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. [415 U.S. at 318, 94 S.Ct. at 1111.]
We need not decide if vulnerable status alone without possible fear of complicity requires disclosure of relevant parts of the juvenile record. In the Davis case denial of this right of effective inquiry was held to be "constitutional error of the first magnitude," incapable of cure by a showing of lack of prejudice. The trial judge's refusal (where, as here, the juvenile may be a potential suspect in the investigation) to permit defense counsel to cross-examine Hankins on his status as a juvenile probationer in order to afford the defense a possible argument as to the lack of reliability of his identification, is constitutional error requiring reversal. Under these circumstances the general thrust of the Davis opinion is to allow the jury to have all available facts bearing on credibility, including a witness's juvenile probation or parole status, where such status could possibly be construed by a jury as influential in evaluating a witness's testimony in a criminal case. We believe a more restrictive construction would properly dilute the scope of the confrontation clause as interpreted by the United States Supreme Court. We note the trial judge permitted Hankins to be cross-examined on his concern over being a suspect, which concern he *156 denied. The question, however, is not the witness' professed subjective belief, but rather the jury's conclusion as to the witness' motives under all of the factual circumstances.
In view of the necessity for a retrial the following additional points deserve comment. The trial judge permitted the prosecutor to comment upon the nonproduction of certain witnesses by the defense. Within the limits set forth in State v. Clawans, 38 N.J. 162 (1962) such comment may be proper. At the trial the judge refused to permit defendants to explain why they were unable to find or produce certain witnesses despite efforts to do so. On retrial, if the judge permits the prosecutor to comment on the nonproduction of certain witnesses, defendants should be afforded ample opportunity to explain any efforts to produce these witnesses and reasons for their non-production.
The trial judge gave limiting instructions with respect to prior inconsistent statements, telling the jury they should not be used as substantive evidence but limited to use in evaluating credibility. State v. Provet, 133 N.J. Super. 432 (App. Div. 1975), certif. den. 68 N.J. 174 (1975), explains the admissibility of a prior inconsistent extra-judicial statement as "substantive" evidence under our Evid. R. 63(1) (a). On retrial the jury should be charged consistently with the holding of that case.
As to the trial judge's charge under Davis v. Alaska, supra, the evidence of a prior adjudication of delinquency cannot be used for the purpose of impeaching the general credibility of the witness, as could an adult conviction of a crime. Rather such evidence is admitted for the more specific purpose of impeaching credibility by revealing possible bias, prejudice, interest or ulterior motive on the part of the witness with respect to a particular issue and the charge on new trial should so reflect.
We have examined defendants' other contentions of error and find them without merit. In view of our disposition the additional points raised by appellants do not require comment.
Reversed and remanded for a new trial.