176 N.J. Super. 215 (1980)
422 A.2d 790
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIE L. CRUDUP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1980.
Decided October 28, 1980.
*217 Before Judges BOTTER[1], KING and McELROY.
Joseph Charles argued the cause for appellant (Ashley & Charles, attorneys).
Mary Anne Kredatus, Assistant Essex County Prosecutor, argued the cause for respondent (John J. Degnan, Attorney General, attorney; Donald S. Coburn, Essex County Prosecutor, of counsel; John J. Haggerty, III, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by KING, J.A.D.
Defendant was found guilty of possession of lottery slips, in violation of N.J.S.A. 2A:121-3(b), and with working for a lottery, in violation of N.J.S.A. 2A:121-3(a). He received a custodial sentence and now appeals, claiming that (1) the trial judge unreasonably restricted his right to cross-examine the State's witness, Detective Lang of the narcotics squad, (2) the jury verdict was improperly returned and (3) his trial counsel was ineffective. Since we reverse on the first ground for several reasons, we do not reach the latter grounds.
As a result of an informant's tip the police initially suspected that defendant was a large-scale narcotics dealer. They commenced a surveillance in the area of Springfield Avenue and Hunterdon Street in the City of Newark on September 26, 1977.
*218 The surveillance continued through September 27 and 28. Lang allegedly observed defendant receiving money from a number of people on the street during his surveillance. During Lang's three-day surveillance he never saw defendant receive anything but money and never saw him write anything down. Once, on September 27, Lang saw defendant give something to a person on the street. Lang could not tell what it was.
Based on Lang's observations a search warrant for defendant's person, home and car was issued and executed on October 3. In the affidavit supporting the application Lang expressed the opinion that defendant was engaged in illicit narcotics transactions, not lottery. Lang testified that the search of defendant's person revealed lottery slips and the search of his home produced an adding machine, a calculator, numerous sheets of paper, slips, lottery ribbons, five packages of manila envelopes and two hundred dollars. All, according to the police, evidenced that defendant was working for a lottery operation as a writer. Defendant testified and denied guilt on the charges. He claimed that the evidence was planted by the police, presumably out of frustration, because no narcotics or evidence of narcotics activity were found on defendant, in his home or car.
Early in Lang's cross-examination the following occurred:
Q. [by defense attorney]: Now, you state that on September 26th, you observed Mr. Crudup talking to some people?
A. Yes.
Q. Three males, one female?
A. I do not recall testifying to that, Sir, talking to somebody. As I testified, they handed him some money.
Q. And you observed this?
A. Yes.
Q. Where were you when you observed this?
A. I was observing Mr. Crudup from a vantage point.
Q. Can you tell us where that vantage point was?
MR. MATTHEWS [Prosecutor]: Objection, Your Honor.
THE COURT: Objection sustained.
Q. Were you in a police vehicle when you observed the money exchange?
A. No, I was not.

*219 Q. How far away were you from Mr. Crudup?
A. At this time, I wouldn't want to disclose my vantage point, Sir.
Q. So at this time, we don't know whether you were fifteen feet near Mr. Crudup or five feet?
A. I know where my vantage point was, Sir.
Q. From your vantage point, you saw money exchanged?
A. Yes.
Later in his cross-examination Lang admitted:
Q. And from that vantage point, you were able to see everything very clearly?
A. I could not see everything, no.
From our review of the transcript we conclude that the quality of Lang's observations during the three-day surveillance was a critical aspect of the State's evidence against defendant. Normally, the cross-examiner has a fundamental right to examine a witness about any factors which could possibly affect his visual perception. Here this right was denied, perhaps needlessly.
We equate this situation to that of the so-called "informant's privilege," Evid. R. 36, which is actually the State's privilege "to withhold from disclosure the identity of persons who furnish information of violations to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); State v. Milligan, 71 N.J. 373 (1976); 8 Wigmore, Evidence (McNaughton rev. 1961), § 2374 at 761-762. The same tensions and public policy factors interact in both situations.
Like an informer, a police stakeout site serves an important law enforcement interest. As with the informer, the efficacy of that interest could be seriously impaired by its disclosure. Revelation of the precise location of the site could render future use valueless and expose the owner to reprisal.
But the right to confront and cross-examine adverse witnesses is a fundamental aspect of a fair trial. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In that case Justice Black, writing for the majority stated:
There are few subjects, perhaps, upon which this court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement *220 for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law. [at 405, 85 S.Ct. at 1068].
The essential purpose of confrontation is to secure the opportunity of cross-examination. State v. King, 112 N.J. Super. 138, 141 (App.Div. 1970), aff'd o.b. 59 N.J. 525 (1971).
We conclude that the trial judge should have conducted a hearing on the question of the necessity for withholding the location of Detective Lang's vantage point similar to the kind of hearing held when the defense demands the identity of an informer. See cases collected at N.J. Rules of Evidence (Anno. 1980), Comments to Evid. R. 36. The trial judge must accommodate the competing interests of the criminal defendant and the State. State v. Milligan, supra, 71 N.J. at 384. The privilege of nondisclosure is not absolute and is subject to important limitations. Id. at 383.
At such hearing, the trial judge must determine the importance of disclosure in the particular case to counsel's ability to conduct an effective cross-examination on the witness' ability to perceive. The necessity for disclosure must then be weighed against the consequences of revealing the vantage point. If the vantage point is from a car, a street corner or an abandoned building, there may be no consequences; if the vantage point is in a private home or a place of business, real potential for reprisal against the owner may weigh against disclosure. If maintenance of secrecy is necessary to protect ongoing investigations, this must be considered; if the site is no longer used or useful, other considerations could control. Indeed, an in camera evaluation of the pertinent data by the trial judge may be necessary. See In re Farber, 78 N.J. 259, 274, n. 5 to 281 (1978). The denial of a request for disclosure would be reversible only if the trial court "abused its discretion after weighing the competing considerations of the balancing test." State v. Milligan, supra, 71 N.J. at 384.
*221 We are also satisfied that the trial judge unduly restricted the defense's effort to cross-examine Detective Lang. As we read this record, defense counsel wished to question Detective Lang about his original suspicions, as expressed in the application for a search warrant, that defendant was engaged in narcotics trafficking. The defense theory was that Lang and the other officers were frustrated when no narcotics were found and thus framed defendant on the numbers charges. No matter that the likelihood of defendant's contentions might be slim; under our system he was entitled to fully test the State's proofs and show any possible bias, prejudice, interest or ulterior motive. State v. Hare, 139 N.J. Super. 150, 153-156 (App.Div. 1976), cert. den. 70 N.J. 525 (1976). In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Chief Justice Burger stated:
... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore Evidence, § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400 [1413], 3 L.Ed.2d 1377 (1959). [at 316-317, 94 S.Ct. at 1110-1111]
See, also, Chipman v. Mercer, 628 F.2d 528 (9 Cir.1980), where federal habeas corpus was granted to defendant convicted in state prosecution who was precluded from cross-examining a witness on possible bias and motive to lie.
Although the injection of narcotics into the trial by defense counsel might involve certain risks, this was a judgment for experienced trial counsel, not the judge, to make. The frustration of defendant's attempt to prove a motive for the police to frame him becomes more significant when the State's summation is reviewed. The trial prosecutor stressed to the jury quite strongly that the police had no motive to falsely accuse defendant. He said:
... We don't have a motive for their lying. We simply don't have it. There is no reason in the world why Detective Lang and Szamreta would want to come in here and attack Mr. Crudup.

*222 Where is the motive. Where is the motive for saying this was on Willie Crudup. I suggest to you that no motive was forthcoming because there wasn't one. There isn't a motive for them to come in here and lie to you. Those men were out there doing their job. And this is what they came up with.
In this context the restriction on cross-examination could have been telling to the defense effort. For these reasons, we conclude that the interests of justice require that the defendant be granted a new trial.
Reversed and remanded.
NOTES
[1] Judge Botter was not present during oral argument but by stipulation of counsel is participating in the decision of this matter.