251 N.J. Super. 358 (1991)
598 A.2d 245
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LUIS D. ZENQUIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1991.
Decided October 29, 1991.
*361 Before Judges ANTELL, LONG and BAIME.
Steven J. Fram, designated counsel, argued the cause for appellant (Wilfredo Caraballo, Public Defender, attorney; Steven J. Fram of counsel and on the brief).
Mark E. Bailey, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Mark E. Bailey of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
Defendant was convicted of distribution of heroin (N.J.S.A. 2C:35-5b(3)). The State's principal evidence consisted of the testimony of a police officer who allegedly witnessed the transaction in the course of his surveillance of a "high crime" area. Prior to trial, the prosecutor obtained an order barring the defense from cross-examining the officer concerning the vantage point from which he allegedly observed the sale of the drug. Under the order, defense counsel was precluded from questioning the officer concerning the height of the location, its nature and character, its direction, and the angle from which his observations were made. The only testimony allowed to be elicited at trial concerning the officer's ability to observe the incident was that he was inside an undisclosed building some 50 to 75 feet from the defendant when the sale occurred. We hold that the pretrial order deprived defendant of his sixth amendment right to confrontation.

I.
The State's chief witness at trial was Michael Mihalik, a member of the Trenton Police Department. Officer Mihalik testified that at approximately 2:00 p.m. on June 1, 1988, he embarked upon a surveillance of the corner of Stockton and Academy Streets, an area known for its drug activity. It was a "clear day" and Officer Mihalik had an "unobstructed" view of *362 the area. The officer related that he had taken binoculars with him but found them unnecessary in light of his close proximity to the corner.
During his surveillance, Officer Mihalik observed three people approach Rafael Fernandez. Fernandez referred these individuals to defendant, who was standing nearby. No arrests were made because the officer was unable to determine whether drugs were sold. At 2:40 p.m., Officer Mihalik observed a black woman, later identified as Joanne Carroll, approach Fernandez. Fernandez gestured toward defendant. Defendant then accompanied Carroll to a vacant lot across the street. Officer Mihalik saw Carroll give defendant an undetermined amount of money in exchange for a small package. The officer alerted several policemen who arrested Carroll a few blocks from the scene. A search of her clothing revealed a small quantity of heroin.
After the alleged sale, Officer Mihalik observed defendant cross the street and hand Fernandez an undetermined amount of money. Fernandez ran into a nearby building and returned several minutes later. Both defendant and Fernandez were then apprehended. Neither drugs nor money were found on defendant. A search of Fernandez's pocket disclosed $250 in cash.
Defendant elected to testify. He admitted that he had engaged in conversation with Fernandez, who he knew resided in the area. Defendant denied any contact with Carroll.
It is against this factual backdrop that we consider the issues presented.

II.
We first address questions concerning the procedure utilized by the Law Division in deciding the State's motion. Prior to trial, the State applied for an order barring the defense from questioning Officer Mihalik concerning the vantage point of his surveillance. Pursuant to Evid.R. 8, a hearing was conducted *363 in open court in the presence of defendant and his attorney. Officer Mihalik testified under oath that he observed the drug transaction from a distance of 50 to 75 feet. However, the officer refused to disclose which side of the street he was on, the level or height of the location, its direction, whether it was a private residence, a business, or an abandoned building, and the angle from which his observations were made. The officer testified that disclosure of the location could possibly result in reprisals. He also recounted that the police continued to use the location for drug surveillance purposes.
The court then conducted an in camera hearing from which both defendant and his attorney were excluded. We need not recount in detail what occurred at the hearing. It is enough to say that the exact location of the officer's vantage point was described at length. In addition, the witness repeated his concern that disclosure of the location might result in reprisals and would impair future investigations.
After the in camera hearing, the proceedings continued in open court. Following the arguments of counsel, the trial court entered the order barring the defense from cross-examining Officer Mihalik concerning the location from which he allegedly observed the drug transaction.
We reject defendant's argument that he was denied his sixth amendment right of confrontation when he and his attorney were excluded from the in camera hearing. In the context of the limited nature of the hearing and the societal interests sought to be vindicated, the exclusion of the defense did no real violence to the constitutional values underlying the confrontation clause.
Of course, we recognize that a defendant has a fundamental right to be present at every critical stage of a trial. See, e.g., State v. Trent, 157 N.J. Super. 231, 241, 384 A.2d 888 (App.Div. 1978), rev'd on other grounds, 79 N.J. 251, 398 A.2d 1271 (1979); R. 3:16. Though confrontation means more than being allowed to confront the witness physically, the opportunity *364 to meet the accuser "face to face" before the trier of fact forms the core of the values upon which the confrontation clause rests. See Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597, 606 (1980); Mattox v. United States, 156 U.S. 237, 242, 15 S.Ct. 337, 242, 39 L.Ed. 409, 410-11 (1895). Physical presence of the defendant enhances the reliability of the fact-finding process and promotes society's interest in "having the accused and the accuser engage in open and even contest in a public trial." Lee v. Illinois, 476 U.S. 530, 540, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 525 (1986).
This much conceded, the right of confrontation is not absolute. The right of the accused to be present must be anchored to the reason for its existence. The right to meet one's accuser face to face is not guaranteed "when presence would be useless, or the benefit but a shadow." Snyder v. Massachusetts, 291 U.S. 97, 106-07, 54 S.Ct. 330, 332-33, 78 L.Ed. 674, 678 (1934). The right of confrontation and due process require that a defendant be allowed to be present to the extent that a fair and impartial hearing would be impaired in his absence. Id. at 108, 54 S.Ct. at 333, 78 L.Ed. at 679. It has thus been said that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631, 647 (1987).
Within this analytical framework, we must look to the nature of the hearing to determine whether a defendant has the right to be present. The object of the hearing in this case was to determine whether Officer Mihalik's surveillance point was to be accorded confidentiality. In State v. Williams, 239 N.J. Super. 620, 571 A.2d 1358 (App.Div. 1990) and State v. Crudup, 176 N.J. Super. 215, 422 A.2d 790 (App.Div. 1980), we analogized the issue of the confidentiality of a surveillance site to the well known "informant's privilege." We said that the purpose of both privileges "is to further the public interest in effective law *365 enforcement." State v. Williams, 239 N.J. Super. at 627, 571 A.2d 1358. By preserving the confidentiality of a surveillance point, innocent persons are protected against reprisals, and ongoing and future investigations are free to take their course. Ibid. However, these law enforcement interests must be balanced against the defendant's right to contest the State's charges. Id. at 631, 571 A.2d 1358. We explained that a defendant seeking to learn the location of a police surveillance post should ordinarily show that he or she needs the evidence to conduct his or her defense and that there are no adequate alternative means of "getting at the same point." Ibid. The degree of handicap established by the defendant must then be weighed by the trial court against the policies underlying the privilege. Ibid.
In Crudup, we held that a hearing should be conducted to ensure a proper weighing of the appropriate factors. At the hearing, the trial judge must seek to accommodate the competing interests of the defendant and the State. 176 N.J. Super. at 220, 422 A.2d 790. Specifically,
[T]he trial judge must determine the importance of disclosure in the particular case to counsel's ability to conduct an effective cross-examination on the witness' ability to perceive. The necessity for disclosure must then be weighed against the consequences of revealing the vantage point.... If the vantage point is in a private home or a place of business, real potential for reprisal against the owner may weigh against disclosure. If maintenance of secrecy is necessary to protect ongoing investigations, this must be considered; if the site is no longer used or useful, other considerations could control.
Ibid.
We conclude that defendant's constitutional rights were not violated by his exclusion from the hearing. The purpose of the hearing was to apprise the court of the location from which the surveillance took place and to identify the law enforcement interests that allegedly required protection. Although the hearing pertained to an evidentiary issue  the metes and bounds of defense counsel's cross-examination  the information provided was wholly unrelated to the factual questions to be decided at trial. Whether or not disclosure of the surveillance *366 site might imperil innocent citizens or future investigations was a subject entirely foreign to the question of defendant's guilt or innocence. Defendant had no interest in learning of the reasons for the prosecutor's concern that disclosure would endanger the public and compromise future investigations.
In our view, a defendant's interests are adequately protected by requiring that a transcript of the hearing be made and kept under seal for appellate review. Questions concerning law enforcement's need for confidentiality are thereby preserved for the appellate court's consideration.
Our decision in State v. Ogburne, 235 N.J. Super. 113, 561 A.2d 667 (App.Div. 1989) is clearly distinguishable. There, we held that a defendant may not be excluded from an in camera hearing conducted under the Rape Shield Law, N.J.S.A. 2C:14-7, to determine the admissibility of evidence of any previous sexual conduct of the alleged victim. Id. at 115-16, 561 A.2d 667. A rape victim's sexual history is not confidential information necessary for effective law enforcement. Disclosure of such information has little or no tendency to impair law enforcement objectives. As we have emphasized, the object of the in camera hearing in this case was to determine whether a realistic possibility existed that innocent persons would be threatened or future investigations imperiled if disclosure were required.
We stress the limited contours of our holding. We are concerned here only with that part of a pretrial hearing in which the State presents evidence concerning the need for confidentiality, and where the court must determine whether there are legitimate law enforcement interests that require protection. We hold that defendant has no constitutional right to be present when this evidence is developed.

III.
We nevertheless find that the trial court mistakenly exercised its discretion by unduly restricting the defendant's *367 right of cross-examination. We see no need to divulge what occurred at the in camera hearing. The State presented considerable evidence that future investigations might be compromised by disclosure of the surveillance point. The State's evidence concerning the possibility of reprisals was far less plausible. The question, therefore, is whether defendant's need for the information outweighed these concerns. The tension between these competing interests must be assessed against the backdrop of the constitutional values involved.
The sixth amendment to the Federal Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." Our State Constitution is similarly worded and provides parallel protection. N.J. Const. art. I, para. 10. As we noted previously, confrontation means more than being allowed to confront the witnesses physically. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347, 353 (1974). The primary interest secured by the constitutional protection is the right of cross-examination. Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965).
We have long recognized that cross-examination is the primary means by which the credibility of a witness and the truth of his testimony are tested. State v. Crudup, 176 N.J. Super. at 221, 422 A.2d 790; State v. Hare, 139 N.J. Super. 150, 153-56, 353 A.2d 109 (App.Div. 1976), certif. denied, 70 N.J. 525, 361 A.2d 539 (1976). The cross-examiner "is not only permitted to delve into the witness's story to test [his] perception and memory, but [also] allowed to impeach, i.e., discredit the witness." Davis v. Alaska, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. No matter that the likelihood of defendant's contention "might be slim." State v. Crudup, 176 N.J. Super. at 221, 422 A.2d 790. The point to be stressed is that under our system, a defendant is entitled to fully test the State's proofs by challenging a witness's perceptions and his ability to make observations.
*368 We have previously identified the interests sought to be protected by the informant's privilege. These include the protection of innocent individuals from reprisals and the safeguarding of ongoing or future investigations. We have also noted these interests underlie the principles we have developed in preserving the confidentiality of surveillance points. As with the informer, the efficacy of these interests could be seriously impaired by disclosing the location of a police stakeout site. Revelation of the precise location of the site could render future use valueless and expose the owner to reprisal.
However, the equation of the two privileges is imperfect. The purpose of the informant's privilege is to protect the informant's anonymity. The question is generally presented in the context of a motion to suppress evidence, where the accused seeks to avoid the truth and escape the inculpatory thrust of evidence in hand. State v. Burnett, 42 N.J. 377, 386, 201 A.2d 39 (1964). In contrast, we are dealing here with the trial of the criminal charge itself. The goal of obtaining a truthful verdict outweighs other competing interests.
Moreover, the site of a surveillance, unlike the identity of an informant, is generally not a peripheral issue. Where the question is one of identification or, as here, the ability of a witness to perceive that which he testifies that he observed, it is the only issue in the case. In this context, we note that the informant's privilege is inapplicable where the informer is an "essential witness on a basic issue ..., where the informer is an active participant in the crime for which defendant is prosecuted, ... where a defense of entrapment seems reasonably plausible, ... or where disclosure is mandated by fundamental principles of fairness to the accused." State v. Milligan, 71 N.J. 373, 383-84, 365 A.2d 914 (1976). These instances rarely arise. However, visual observations made from a surveillance site often constitute the entirety of the State's proofs. The defendant's need to discredit such evidence is more apparent and the handicap resulting from non-disclosure and preclusion of cross-examination more disabling.
*369 These considerations militate against application of the surveillance site privilege in a case such as this, where the State's principal evidence consists of the observations of a police officer. We recognize that the privilege has been widely accepted in other jurisdictions. See, e.g., United States v. Harley, 682 F.2d 1018 (D.C. Cir.1982); Jenkins v. United States, 541 A.2d 1269 (D.C. 1988); Thompson v. United States, 472 A.2d 899 (D.C. 1984); Hicks v. United States, 431 A.2d 18 (D.C. 1981). We also acknowledge decisions holding that in order to overcome the privilege the defendant must show there was some "vantage point in the relevant area that would not permit a clear view" of the criminal conduct alleged. See Jenkins v. United States, 541 A.2d at 1272; Thompson v. United States, 472 A.2d at 901. We are nevertheless of the view that a less particularized showing of need may overcome the privilege.
This is not a case in which disclosure of the surveillance point "would be only of peripheral assistance" to the defendant. State v. Williams, 239 N.J. Super. at 634, 571 A.2d 1358. Officer Mihalik's testimony was crucial to the State's case and not merely corroborative. See Commonwealth v. Lugo, 406 Mass. 565, 572, 548 N.E.2d 1263, 1267 (1990). A penetrating cross-examination was the only means available to the defense to contest the charges. Defendant was denied that right and opportunity. The trial court prohibited all inquiry into Officer Mihalik's ability to perceive and make observations, the only real factual issue in the case. See Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1437, 89 L.Ed.2d 674, 683 (1986). A reasonable jury might have received a significantly different impression of the police officer's credibility had defense counsel been permitted to pursue his proposed line of cross-examination. A reversal is therefore mandated.

IV.
Because a retrial is necessary, we briefly address the claim that Officer Mihalik's destruction of his notes impaired *370 defendant's ability to defend. We find no merit in this contention. R. 2:11-3(e)(2). The notes were only tangentially relevant to the factual issues in the case. While it would have been preferable had the court made specific findings concerning whether the officer's failure to preserve the notes was in "bad faith," see Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988), reh'g denied, 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007 (1989), we discern no undue prejudice to the defendant's rights. The court instructed the jury that if it found Officer Mihalik destroyed his notes at a time when he knew the case was proceeding to trial, it could infer that the notes contained information inconsistent with the witness's trial testimony. The court's charge obviated any potential for prejudice.
The judgment of conviction is reversed and the matter is remanded for a new trial.