The judgment of convictions and sentences are affirmed.

605 A.2d 728

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. MATTEO GARCIA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 8, 1992—Decided April 1, 1992.

Before Judges KING, GRUCCIO and BROCHIN.

*Wilfredo Caraballo,* Public Defender, attorney for appellant (*Jay L. Wilensky,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Herbert H. Tate, Jr.,* Essex County Prosecutor, attorney for respondent (*Virginia M. Lincoln,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

GRUCCIO, J.A.D.

This appeal involves a single narcotics transaction which was observed by police from a hidden surveillance point. The location of the surveillance point was the subject of a Rules of Evid., *Rule* 8 hearing which was held upon the State's motion for a protective order. The trial judge determined that disclosure of the vantage point was not necessary. We affirm.

Following a jury trial, defendant Matteo Garcia was convicted of conspiracy, *N.J.S.A.* 2C:5–2 (count one); possession of her-

oin, *N.J.S.A.* 2C:35–10a(1) (count two) [1]; possession of heroin with intent to distribute in the third degree, *N.J.S.A.* 2C:35–5b(3) (count three); and possession of heroin with intent to distribute within 1000 feet of school property in the third degree, *N.J.S.A.* 2C:35–7 (count four).

Defendant was tried to a jury. Prior to trial, the State moved, pursuant to *Rule* 3:13–3d(1), for a protective order concerning the location of a police surveillance point. After an *in camera* hearing, the judge granted the motion.

Defendant's motion for a new trial was denied and defendant was sentenced on count three to a five-year term. A $30 Violent Crimes Compensation Board penalty and a $1,000 Drug Enforcement and Demand Reduction penalty were also imposed. On count four, defendant was sentenced to a concurrent five-year term, with a three-year period of parole ineligibility. A $30 Violent Crimes Compensation Board penalty, a $50 lab fee, a $1,000 Drug Enforcement and Demand Reduction penalty and a 24–month driver's license suspension were also imposed. [2]

On appeal, defendant contends:

1. The trial court violated defendant's constitutional rights to confrontation and due process by prohibiting disclosure of the vantage point from which the police claimed to have observed him engaged in a narcotics transaction.

2. The trial court violated the rules of discovery to defendant's prejudice by permitting the State's expert witness to testify without prior advice of his name or the substance of his testimony.

3. The trial court further violated defendant's constitutional right to confrontation by precluding cross-examination of the State's expert witness con-

---

[1] Counts one and two were merged into count three and dismissed for purposes of sentencing.

[2] Defendant pled guilty to charges arising from an entirely separate indictment numbered 125-1-90, and was sentenced simultaneously with the instant charges to a term of 15 years, to run concurrently with the sentence on the instant charges. Defendant withdrew his appeal as to Indictment No. 125-1-90.

cerning variations on the hypothetical posed and his opinions rendered in previous cases.

4. Defendant's constitutional right to a fair trial was violated by a barrage of improper and prejudicial prosecutorial comments.

5. *N.J.S.A.* 2C:35-15, which provides that mandatory drug enforcement and demand reduction penalties be imposed on all persons convicted of offenses enumerated in the Comprehensive Drug Reform Act of 1986, *N.J.S.A.* 2C:35-15, *et. seq.*, violates defendant's rights to equal protection and due process, is cruel and unusual punishment, and violates the state constitutional prohibition of excessive fines. (Not raised below).

The facts pertinent to this appeal are as follows: On January 8, 1989, at approximately 3:50 p.m. in the vicinity of 10 Clark Street in Newark, New Jersey, police officers Joseph Farina and Dennis McCauley observed a narcotics transaction from a hidden surveillance point. The vantage point was estimated to be approximately 50 to 60 feet from the area where defendants were standing at the time of the transaction.

Officer McCauley testified on direct examination at a *Rule* 8 hearing that the building from which the officers observed the transaction was located in Apartment X on Broadway in Newark, New Jersey.[3] The surveillance point was elevated, occupied and located approximately 55 feet to the south of the intersection of Broadway and Clark Street. The rear of the building faced onto a vacant lot, which was the width of approximately two to three buildings. Across from the lot is Broad Street, which runs parallel to Broadway. The crime site is located within 100 feet of the Berringer Prep School.

On cross-examination Officer McCauley relayed his fears of disclosing the surveillance point. He said that if the drug dealers were to discover his point, the danger that he would be attacked was great. His main concern, however, was that the dealers would burn the entire block in order to rid the area of potential surveillance locations. Officer McCauley also testi-

---

[3]"X" is a fictitious address. The exact address was not disclosed at trial, but was revealed to defense counsel at the *Rule* 8 hearing after much prompting by the trial judge. Defense counsel was prohibited from revealing the point of surveillance to his client.

fied to the distinct need for surveillance in that area as it was known to be a high drug trafficking district. The site was still being used for surveillance at the time McCauley's testimony was given.

Drawing upon his 19 years of service as a narcotics officer, McCauley explained that it was extremely difficult for him to find a surveillance position as he was easily recognized in the area of Clark Street. He also explained that it is very difficult to obtain the permission of building owners to use their premises as a surveillance point for fear of retaliation by the drug dealers.

The trial judge determined that the surveillance point should not be revealed and stated that, to the extent retaliation was at stake, the interest of preserving the secrecy of the surveillance point far outweighed defendant's interests in a broader cross-examination. The court permitted defense counsel to question Officer McCauley as to his ability to clearly see the transaction, but cautioned counsel to carefully phrase his questions in order to avoid exposing the precise location of the surveillance point.

Officers Farina and McCauley observed this particular area of Clark Street as the result of information given to them by an informant, who told the officers that two males were in the area of 10 Clark Street and were dealing "Dope-P-Dope," which is heroin. He said that defendant and his partner (codefendant, who is not the subject of this appeal) kept packs of heroin, under a piece of cardboard in a freezer, in an abandoned lot across the street from 10 Clark Street. When approached by a buyer, defendant or codefendant would retrieve the heroin from the freezer and bring it back to the purchaser.

Acting upon this information, the officers established a surveillance point where they could observe both defendant and codefendant in front of 10 Clark Street and could also observe the freezer in the abandoned lot. During the course of the surveillance, the officers observed a male approach codefendant and engage in a brief conversation. Codefendant then spoke to

defendant who retrieved something from under a piece of cardboard in the freezer. Defendant handed the object to the man [4] who then gave codefendant money and departed.

Observing this transaction, the officers left their post to apprehend defendant and codefendant. As they approached the area, defendant and his associate saw them and fled through the lot onto Broad Street. Defendant was apprehended by Officer Farina. At that time, McCauley went to the freezer and discovered what was later determined to be nine glassine envelopes of heroin marked "white monster."

The officers' testimony was tested in a thorough cross-examination. At trial, Officer Farina testified that his view of the transaction was "unobstructed," yet, on cross-examination, admitted that a building was located across Clark Street between a row of buildings on Broadway, from which the surveillance took place, which is not present in current photographs of the location. Further doubt was elicited when Officer McCauley described the unknown male who approached to purchase the drugs as "white" in his grand jury testimony, which took place less than two months after the incident. At trial, after testifying that the observation was made in daylight and that he had no visionary problems, Officer Farina described the purchaser as a "black" male. The police report of the incident describes the purchaser as a "white hispanic." The alleged buyer was not found.

Following the arrest, $23 was found in codefendant's possession, consisting of one ten-dollar bill, two five-dollar bills and three one-dollar bills. No money was found in defendant's possession. The State presented John C. Arnold, who is employed as an Essex County investigator. Arnold stated that heroin is usually packaged in bundles of ten, that a package

---

[4] Officer McCauley indicated at trial that defendant gave the package to codefendant, but told the grand jury that defendant handed the package directly to the purchaser.

usually sells for $15 to $20 and that these factors therefore would be consistent with the nine packets found in the freezer and the $23 found in codefendant's possession. Arnold admitted on cross-examination that he had not worked on this particular case but was basing his opinion completely on the hypothetical offered. On cross-examination, counsel for defendant offered a different hypothetical to the expert with facts which were not yet in evidence. The court instructed counsel to refrain from using the hypothetical, to which counsel responded that he was using his "defense that there was no surveillance of the transaction." Defendant did not take the stand.

■ Defendant first contends on appeal that the trial court erred in restricting defendant's ability to cross-examine the officers concerning their precise location at the time they observed the narcotics transaction. Defendant alleges that the surveillance location was the most critical issue in the case since the state's evidence relied wholly upon the testimony of the officers. Defendant posits that this deprivation was so prejudicial that he was denied his constitutional right to a fair trial.

■ The right to confront, *State v. Williams*, 239 *N.J.Super.* 620, 634, 571 *A.*2d 1358 (App.Div.1990), and cross-examine an adverse witness has been guaranteed by the Sixth Amendment to the United States Constitution and Article 1, paragraph 10 of New Jersey Constitution. When faced with the conflicting interests of full disclosure to defendant and public safety, however, the common law has set forth that each case must be individually examined. *Roviaro v. United States*, 353 *U.S.* 53, 62, 77 *S.Ct.* 623, 629, 1 *L.Ed.*2d 639, 646 (1957); *State v. Crudup*, 176 *N.J.Super.* 215, 219, 422 *A.*2d 790 (App.Div.1980).

In *Crudup*, Judge King set forth that

the trial judge must determine the importance of disclosure in the particular case to counsel's ability to conduct an effective cross-examination on the witness' ability to perceive. The necessity for disclosure must then be weighed against the consequences of revealing the vantage point ... if the vantage point is in a private home or a place of business, real potential for reprisal

against the owner may weigh against disclosure. If maintenance of secrecy is necessary to protect ongoing investigations, this must be considered; if the site is no longer used or useful, other considerations should control.

*State v. Crudup, supra,* 176 *N.J.Super.* at 220, 422 *A.*2d 790.

Here, the trial court engaged a similar balancing test and determined that the potential danger to not only the owners of the building, but also to the residents of the block in which the building was located, outweighed defendant's interests in disclosure. Since the propriety of each such suppression must be individually determined, the issue here is whether the trial judge properly used her discretion. Such a review hinges upon the judge's balancing process. *State v. Milligan,* 71 *N.J.* 373, 365 *A.*2d 914 (1976).

Officer McCauley testified that if the surveillance point was disclosed, the danger of reprisal would be great. He stated that the entire block in which the building was located could be endangered. McCauley also feared that he would be attacked and, since available surveillance points are extremely rare in that area, surveillance of narcotics transactions would be greatly curtailed in the event of disclosure.

After weighing these factors and allowing general examination of the officers' location, the trial judge would not permit disclosure of the building's exact location. Cross-examination of officers McCauley and Farina elicited that the surveillance point was elevated, the general vicinity of the building, the weather conditions and the perspective of the officers during the transaction.

The primary purpose of cross-examination is to allow a defendant to test the credibility of a witness and the truth of his testimony. Cross-examination is particularly critical in cases which are founded solely upon the observations of a witness.

In *State v. Zenquis,* 251 *N.J.Super.* 358, 598 *A.*2d 245 (App. Div.1991), another panel of this court emphasized the importance of protecting a defendant's right to be apprised of all pertinent facts, including the exact location point of surveil-

lance, explaining that most surveillance cases are premised entirely upon the visual observations of the arresting officers. That panel concluded that defendant Zenquis was wrongly prohibited from questioning the officers as to their surveillance location and their ability to see the transaction. We do not necessarily subscribe to such a sweeping conclusion but, rather, adhere to the view that each case should be individually analyzed and determined upon its own facts. We also observe, as did the *Zenquis* court, that this privilege has been widely accepted in other jurisdictions.

For example, the U.S. Circuit Court for the District of Columbia has stated that nondisclosure of a surveillance point is acceptable where the officers specify the distance and elevation of the observation point from the place of the transaction. *United States v. Harley,* 682 *F.*2d 1018, 1020 (D.C.Cir.1982), cited in *State v. Williams,* 239 *N.J.Super.* 620, 571 *A.*2d 1358 (App.Div.1990). Here, Officers Farina and McCauley indicated that they observed the transaction from a distance of approximately 50–60 feet, and that they were "elevated" at the time such observance was made. Based upon this information, defense counsel elicited contradictory responses from the officers as to the skin color of the buyer and the person to whom defendant actually handed the package retrieved from the freezer. As such, the visibility of the officers was effectively called into question and discounted before the jury. Failure to disclose the exact address of the observation point did not hamper defendant's efforts to discredit the officers in this case.

Moreover, the record is devoid of an articulated need on the part of defendant which mandates disclosure of the precise location of the vantage point. Where a defendant fails to articulate a reason for disclosing the vantage point, the trial court does not err in prohibiting the revelation thereof. *See State v. Williams, supra,* 239 *N.J.Super.* at 631, 571 *A.*2d 1358. It appears from the record that defendant was able to effectively cross-examine the officers and suffered no prejudice from

the non-disclosure of the precise address of the building. In such cases, equity militates against disclosure.

Unlike *Zenquis,* which was hinged upon defendant's inability to effectively cross-examine the single officer who had observed the transaction, this case presents a scenario which prohibits disclosure; two officers observed the transaction and the contradictions in their testimony were readily drawn out on cross-examination. Furthermore, disclosure of the vantage point could have endangered many innocent people and obviated future observations in that school area which was in desperate need of protection.

The trial judge properly limited the questioning as to the exact surveillance point after conducting a *Rule* 8 hearing and carefully balancing the conflicting constitutional interests of defendant and the State. A trial judge is clearly qualified to make such a determination as he has an infinitely better feel for the case and the evidence presented. Failure to disclose the precise vantage point was not prejudicial to defendant but rather served to protect school children and potential victims of retaliation. As such, the trial court's decision was proper.

[At the court's request, points two, three, four and five, which were rejected by the Appellate Division, are not included in the published opinion.]

Affirmed.