235 N.J. Super. 113 (1989)
561 A.2d 667
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID OGBURNE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 25, 1989.
Decided July 21, 1989.
*115 Before Judges KING, BRODY and SKILLMAN.
Alfred A. Slocum, Public Defender, attorney for appellant (Vito Sciancalepore, Designated Counsel, of counsel and on the brief).
Donald R. Belsole, Acting Attorney General, attorney for respondent (Jessica S. Oppenheim, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The primary issue presented by this appeal is whether a defendant may be excluded from an in camera hearing conducted under the Rape Shield Law, N.J.S.A. 2C:14-7, to determine the admissibility of evidence of any previous sexual conduct of the alleged victim. We conclude that a trial court lacks the authority to exclude a defendant from such a hearing. *116 Furthermore, the exclusion of defendant from the Rape Shield hearing in this case was not harmless error. Therefore, defendant must be afforded a new Rape Shield hearing at which he is present and, if the victim gives testimony at that hearing which is different in any material respect from her testimony at the original hearing, defendant must be granted a new trial.
Defendant was charged with sexual assault, in violation of N.J.S.A. 2C:14-2c(5), and burglary, in violation of N.J.S.A. 2C:18-2. A jury acquitted defendant of burglary but convicted him of sexual assault. The court sentenced defendant as a persistent offender to a 15 year term of imprisonment with 5 years of parole ineligibility.
The victim was 14 years old at the time of the assault on April 28, 1983. Defendant, then 28 years old, was her sister's boyfriend. The victim's sister was not at home on the night of the assault and defendant apparently gained entry into the house through a broken window. The victim testified that she awoke in the middle of the night to find defendant engaging in intercourse with her. She unsuccessfully struggled with him, but he continued the sexual assault until he ejaculated. The victim then ran to her mother's bedroom and told her what had happened. After confronting defendant, who denied the sexual assault, the victim's mother took her to the hospital. One of the tests performed on the victim showed the presence of spermatozoa-bearing semen in her vagina.
Defense counsel indicated at the beginning of trial that he intended to cross-examine the victim with respect to her sexual activities during the day of the assault and the preceding three or four days in order to raise doubt as to whether the semen found in her vagina came from the defendant. Consequently, he requested an in camera hearing pursuant to N.J.S.A. 2C:14-7a to determine the admissibility of this evidence. The trial court granted this request, but over defendant's objection denied him the right to be present during the hearing. The court indicated its awareness of defendant's right of confrontation *117 and right to be present at each stage of the proceeding. However, the court concluded that the hearing required by N.J.S.A. 2C:14-7 must be conducted in chambers outside the presence of the defendant "to protect the privacy of the witness and avoid unnecessary embarrassment and humiliation."
At the hearing pursuant to N.J.S.A. 2C:14-7, the victim testified that she had had sexual intercourse prior to defendant's assault but not within the preceding two weeks. Based upon the evidence presented at the hearing, the trial court ruled that any inquiry by defendant regarding the victim's previous sexual conduct would be limited to whether she had had sexual intercourse between April 24th and the day of the alleged assault, April 28th, and whether she had ever had sexual intercourse with a white male.[1] However, defense counsel did not pursue either of these permitted lines of inquiry during his cross-examination of the victim.

I
The trial court erred in barring defendant from the in camera hearing required by the Rape Shield Law. A criminal defendant has a fundamental right to be present at every critical stage of a trial. State v. Trent, 157 N.J. Super. 231, 241 (App.Div. 1978), rev'd on other grounds 79 N.J. 251 (1979). The rules of court state that "[t]he defendant shall be present at every stage of the trial." R. 3:16. A defendant's right to be present during any pertinent testimony given by a prosecution witness is also guaranteed by the Confrontation Clause of the Sixth Amendment of the United States Constitution. Coy v. Iowa, 487 U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); cf. *118 Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (Confrontation Clause is not violated by exclusion of defendant from hearing regarding competency of prosecution witness where questions asked at hearing were unrelated to the basic issues at trial and defense counsel was able to repeat questions asked at competency hearing during cross-examination at trial).
Since a criminal defendant has a constitutional right to be present at every critical stage of a trial, a trial court ordinarily should not exclude a defendant from any stage of trial proceedings except where there is express statutory authorization for such exclusion.[2] The trial court concluded that the legislative direction that a hearing to determine admissibility of evidence under the Rape Shield Law be conducted "in camera" provided the requisite authorization for the exclusion of the defendant. However, an in camera hearing is simply a hearing "in chambers" or "in private." Black's Law Dictionary (5th ed. 1979) at 684. A hearing is said to be in camera "either when the hearing is had before the judge in his private chambers or when all spectators are excluded from the courtroom." Ibid.; see also State v. Blake, 292 Or. 486, 640 P.2d 605, 606-607 (1982). Consequently, the statutory mandate that a hearing under N.J.S.A. 2C:14-7 be held "in camera" does not mean that the defendant may be excluded from the hearing.
The State argues that even if the exclusion of defendant from the hearing under N.J.S.A. 2C:14-7 was in error, the error was harmless because defense counsel was present and could *119 confer with defendant. However, Coy holds that the Confrontation Clause guarantees not only the right of cross-examination but also the right to "face-to-face confrontation between accused and accuser." 487 U.S. at ___, 108 S.Ct. at 2801, 101 L.Ed.2d at 865. The foundation of the latter right is the belief that "[i]t is always more difficult to tell a lie about a person `to his face' than `behind his back.'" Id. at ___, 108 S.Ct. at 2802, 101 L.Ed.2d at 866. Furthermore, while Coy states that violations of the Confrontation Clause are subject to a harmless error analysis, it also states that "[a]n assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, ... such an inquiry would obviously involve pure speculation...." Id. at ___, 108 S.Ct. at 2803, 101 L.Ed.2d at 867.
In this case, the victim testified at the Rape Shield hearing that she did not have sexual relations with anyone within two weeks prior to defendant's assault and that she never had sexual relations with a white person. This testimony resulted in the trial court limiting defense counsel's cross-examination of the victim regarding her previous sexual conduct. In view of this ruling, defense counsel did not ask the victim any questions on this subject in front of the jury. Coy precludes us from assuming that the victim would have given the same testimony at the Rape Shield hearing if she had been forced to testify in the presence of the defendant. Furthermore, because the essential thrust of the defense was that a person other than defendant was the source of the semen found in the victim's vagina, the outcome of the case could have been different if the victim had admitted at the Rape Shield hearing that she had had sexual relations a short time before defendant's alleged assault or that she had had sexual relations with a white man.
However, the violation of defendant's confrontation rights was limited to his exclusion from the Rape Shield hearing. Therefore, that constitutional violation can be remedied by a new Rape Shield hearing attended by defendant. See State v. *120 Kelly, 61 N.J. 283, 294-295 (1972); State v. Crandall, supra, 231 N.J. Super. at 134. If the victim gives substantially the same testimony at the new hearing in defendant's presence as she gave at the original hearing from which defendant was excluded and the trial court reaffirms its original order limiting the scope of cross-examination of the victim regarding her previous sexual conduct, the trial court should enter an order confirming the judgment of conviction. But if the victim gives different testimony in defendant's presence which indicates that defendant should have been given greater latitude in cross-examining the victim regarding her previous sexual conduct in front of the jury, defendant should be granted a new trial.

II
Defendant also argues that the trial court erred in refusing to permit defense counsel to ask the victim whether she engaged in any sexual activity more than four days before the alleged crime and whether she was a virgin. These arguments are clearly without merit and do not require extended discussion. R. 2:11-3(e)(2). Defense counsel asked to be allowed to question the victim regarding her sexual conduct on the day of the crime "or two or three days before," because "that's usually the lifespan of spermatozoa [in a vagina]." On several other occasions, defense counsel said that he wanted to ask the victim whether she had sexual intercourse "at least three to four days" prior to April 28, 1983. Thus, the trial court permitted the victim to be questioned about her sexual conduct for the period during which defense counsel indicated semen could survive in the vagina. Subsequently, the State's forensic expert testified that semen would rarely survive in the vagina for more than 16 hours. Although this expert conceded on cross-examination that semen could be found in a vagina up to eight days after deposit, he said it was "rare" to find it there "much longer" than eight days. Despite this testimony, defense counsel did not request leave to recall the victim to question her about sexual conduct more than four days before *121 the crime. In any event, since the victim testified that she did not have sexual intercourse for at least the previous two weeks, defendant could not have gained anything from being allowed to question the victim about her sexual conduct over the eight day period he now contends would have been appropriate.
The trial court also properly ruled that defendant could not ask the victim whether she was a virgin. The only possible relevancy of such an inquiry would be to establish that the source of the semen found in the victim could have been someone other than defendant. However, N.J.S.A. 2C:14-7 provides that evidence regarding the sexual conduct of victim offered by a defendant charged with sexual assault is admissible only if "the probative value of the evidence offered is not outweighed by its collateral nature or by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim." Because defendant was permitted to question the victim regarding her sexual conduct during the only relevant time period (within a few days of the sexual assault), any more generalized inquiry regarding her prior sexual history would have created a danger of confusion of the issues and would have represented an unwarranted invasion of the victim's privacy. Indeed, evidence that the victim of a sexual assault is not a virgin is the precise kind of evidence which the Rape Shield Law was intended to ordinarily exclude. State v. Parsons, 401 N.W.2d 205, 208-209 (Iowa Ct. App. 1986); State v. Gulrud, 140 Wis.2d 721, 412 N.W.2d 139, 141-142 (Wis. Ct. App. 1987), review den. 141 Wis.2d 985, 416 N.W.2d 297 (Wis. 1987).

III
Finally, defendant argues that his sentence was manifestly excessive. Defendant does not dispute that he qualified for sentencing as a persistent offender pursuant to N.J.S.A. 2C:44-3a. Moreover, in view of defendant's record and the nature of this offense, the trial court did not abuse its discretion *122 in finding that the interests of the public would be served by imposition of an extended term. See State v. Dunbar, 108 N.J. 80, 89-91 (1987). Given defendant's status as a persistent offender, the fifteen year term imposed upon defendant was the presumptive term for the second degree offense of which he was convicted. N.J.S.A. 2C:44-1f(1); N.J.S.A. 2C:43-7a(3). Moreover, defendant was subject to a period of parole ineligibility of up to one-half that term. N.J.S.A. 2C:43-7b.
Within this statutory framework, we find no abuse of discretion in the imposition upon defendant of a 15 year term with 5 years of parole ineligibility. See State v. Dunbar, supra, 108 N.J. at 94 ("A court that has decided to impose an extended term in the interest of public protection on the basis of defendant's prior offenses may conclude quite correctly that a presumptive extended term reflects the appropriate balance of other aggravating factors against mitigating, but that the totality of aggravating factors, including the prior record, clearly and substantially outweighs the mitigating factors and calls for a period of parole ineligibility."). The court properly identified the extent of defendant's prior record, N.J.S.A. 2C:44-1a(6), the risk that defendant will commit other offenses, N.J.S.A. 2C:44-1a(3) and the need to deter defendant, N.J.S.A. 2C:44-1a(9), as pertinent aggravating sentencing factors. Since the fact that the victim was less than 16 and defendant was at least 4 years older was sufficient to support his conviction for sexual assault, the court also properly identified the fact that defendant forcibly raped the victim while she was sleeping as an aggravating factor. This aggravating factor may have been more appropriately viewed as one relating to "the nature and circumstances of the offense," N.J.S.A. 2C:44-1a(1), rather than "the seriousness of the harm inflicted on the victim," N.J.S.A. 2C:44-1a(2), but we have no reason to believe that the precise statutory citation for this aggravating circumstance influenced the trial court in exercising its sentencing discretion. We also are satisfied from a review of the entire sentencing transcript that the trial court did not treat the victim's age as an aggravating *123 factor. Finally, the trial court properly found that there were no mitigating factors pertinent to this sentence.
For the reasons previously stated, we remand to the trial court to conduct a new hearing in the presence of the defendant regarding the admissibility of evidence of the victim's previous sexual conduct.
NOTES
[1] The latter inquiry was apparently allowed because, although both the defendant and victim are black, some of the hairs found on the sheets in the victim's bedroom were found upon microscopic analysis to be "caucasian hairs." We have no occasion to decide whether the inquiries permitted by the trial court regarding the victim's previous sexual activities were broader than contemplated by N.J.S.A. 2C:14-7.
[2] For example, in a case involving a charge of sexual assault, sexual contact or child abuse, N.J.S.A. 2A:84A-32.4 specifically authorizes the court to order the taking of testimony on closed circuit television outside the presence of the defendant upon a finding that "the witness is 16 years of age or younger and that there is a substantial likelihood that the witness would suffer severe emotional or mental distress if required to testify in open court." See State v. Crandall, 231 N.J. Super. 124, 127-131 (App.Div. 1989). N.J.S.A. 2A:84A-32.4 was not invoked in this case.